HERMINIA RIVERA, por sí y como madre con patria potestad sobre y en representación de su hijo menor JOSÉ ANTONIO RIVERA, demandante y apelada, *v.* LUIS IZQUIERDO SERRANO, ET ALS., demandados; ALFREDO IZQUIERDO NEGRÓN, demandado y apelante.

Núm. 7070.—*Sometido:* Julio 22, 1937. *Resuelto:* Noviembre 18, 1937.

*Rafael Buscaglia,* abogado del apelante; *Ángel M. Torres* y *Ángel de Jesús Matos,* abogados de la apelada.

El Juez Presidente Señor Del Toro emitió la opinión del tribunal.

El 7 de septiembre de 1934 Herminia Rivera, por sí y como madre con patria potestad sobre y en representación de su hijo menor José Antonio Rivera, entabló demanda jurada contra Luis, José, Julio, Arturo y Cruz Izquierdo Serrano, Guillermo Enrique Izquierdo Luque, Agustín y Guillermo Maymí Izquierdo y Alfredo Negrón, hoy Alfredo Izquierdo Negrón, en solicitud de sentencia declarando al menor hijo natural reconocido de Eladio Izquierdo Serrano, con los demás pronunciamientos de ley.

El 5 de octubre siguiente el demandado Alfredo Negrón, hoy Alfredo Izquierdo, por su abogado, alegó que la demanda no aducía hechos suficientes para constituir una causa de acción en su contra y contenía una indebida acumulación de partes demandadas pues de ella misma se desprendía que los ocho primeros demandados no eran partes necesarias ya que el compareciente era la única persona contra quien podía dirigirse la acción por haber sido declarado hijo natural reconocido de Eladio Izquierdo Serrano por sentencia de junio 29, 1932, siendo los dichos otros ocho demandados parientes colaterales únicamente. También presentó una moción pidiendo la eliminación de ciertos particulares de la demanda.

Por resolución de noviembre 7, 1934, la corte de distrito denegó la moción eliminatoria porque las eliminaciones solicitadas no constituían materia impertinente ni redundante a la acción, ni eran conclusiones de hecho o de derecho, y declaró sin lugar las excepciones previas porque la demanda aducía los hechos esenciales pertinentes a una acción de la naturaleza de la ejercitada y porque si bien se alegaba que se había dic-

tado la sentencia de junio 29, 1934, no se expresaba que hubiese adquirido el carácter de firme.

Contestó el dicho demandado Negrón, hoy Izquierdo, negando las alegaciones de la demanda y alegando como materia nueva que el pleito era el resultado de una confabulación entre la demandante y los otros ocho demandados con el propósito de entorpecer y dilatar la reclamación de herencia entablada por él ante la propia corte contra los dichos otros ocho demandados.

Presentó entonces la demandante una moción para que se hiciera más específica la materia nueva alegada en la contestación, que fué declarada con lugar, y no habiendo el demandado cumplido la orden de la corte en cuanto al particular, se solicitó y se anotó su rebeldía por lo que al mismo respecta.

Señalado el juicio para marzo 21, 1935, fué celebrado compareciendo la demandante y el demandado Alfredo Izquierdo Negrón por sus abogados. Los otros demandados no comparecieron. Presentó la demandante su evidencia consistente en documentos y declaraciones de testigos. Terminada, dijo el demandado:

"Señor Juez, vamos a presentar una moción de *nonsuit*. Si su señoría examina la demanda, verá que en ella se exponen dos causas de acción para el reconocimiento, concubinato y reconocimiento del padre manifestado con posterioridad al nacimiento por actos naturales de un padre para con el hijo. En cuanto a la prueba de concubinato, no hay prueba de concubinato; en cuanto al reconocimiento tampoco hay prueba alguna."

La corte declaró sin lugar la moción de "nonsuit" y "el demandado manifestó que no iba a presentar prueba," quedando así el caso terminado y sometido a la corte que lo resolvió por sentencia de abril 18, 1935, decretando el reconocimiento solicitado.

Apeló el demandado y en su alegato imputa a la corte sentenciadora la comisión de cinco errores.

El primero se limita a señalarlo. No lo discute en debida forma en su alegato. Tampoco lo haremos nosotros.

■ El segundo guarda relación con las excepciones previas, argumentándose sólo en cuanto a la de indebida acumulación de partes. Es cierto que si el demandado Alfredo Izquierdo Negrón había sido declarado hijo natural reconocido del doctor Eladio María Izquierdo por sentencia de junio 29, 1932, era su único heredero, por ser las otras personas—los otros ocho demandados—parientes colaterales que como tales habían sido declarados herederos con anterioridad, pero es lo cierto también que no alegándose que la sentencia de junio 29, 1932, fuera firme, los otros ocho demandados podían tener aún derechos que defender en la herencia del doctor. Y no se diga que si esto último se reconoce no existiría acción contra el hijo natural reconocido, porque aunque la repetida sentencia de junio 29, 1932, no hubiera adquirido el carácter de firme por haber sido apelada, es lo cierto que existía y tenía la presunción de justa mientras no se obtuviera su revocación. Aunque la situación es anómala, a los efectos de no dilatar el ejercicio de la acción y obtener una sentencia que resultara válida contra todos, parece lógico el procedimiento adoptado por la demandante y sancionado por la corte de distrito, pero aunque hubiera que reconocer que no estaba estrictamente autorizado por la ley, el error que pudiera haberse cometido no sería perjudicial. De hecho el pleito continuó únicamente contra la parte interesada en cuanto a la herencia del doctor Izquierdo se refiere.

El tercer señalamiento por el que se imputa error a la corte de distrito por haber ordenado que se hiciera más específica la alegación de confabulación, carece, a nuestro juicio, de mérito, atendidas todas las circunstancias concurrentes.

■ Por el cuarto señalamiento se sostiene que:

"La corte cometió error al admitir prueba con oposición del demandado apelante, quien tomó las excepciones correspondientes, tendente a establecer la paternidad o sea los vínculos de sangre que podían unir al demandante con el Dr. Eladio Izquierdo Serrano."

Si se estudian los casos en que se ha acudido a las cortes de justicia para que declaren que determinada persona tiene el *status* de hijo natural reconocido de otra, apelados para ante este tribunal, se verá que siempre se ha alegado como fundamento básico de la acción que el hijo es el producto de las relaciones carnales del padre con determinada mujer y fué reconocido como tal por el padre, de acuerdo con el estatuto. Y como es consiguiente, se ha admitido la prueba presentada para probar la alegación. Bastará que nos refiramos al propio caso del demandado Alfredo Negrón cuando entabló demanda contra la Sucesión del Dr. Izquierdo, pidiendo sentencia por virtud de la cual se declarara, como se declaró, que era hijo natural reconocido de dicho doctor. 46 D.P.R. 660.

Además la cuestión quedó dilucidada y resuelta por esta corte en el caso de *Colón v. Sucesión A. J. Tristani,* 44 D. P.R. 171, 177 y siguientes, en el que esta corte por medio de su juez asociado Sr. Córdova Dávila, se expresó así:

"El artículo 189 de nuestro Código, aprobado en 1902, dice así:

" 'El padre está obligado a reconocer al hijo ilegítimo en los casos siguientes:

" '1.—Cuando exista escrito suyo indubitado en que expresamente reconozca su paternidad.

" '2.—Cuando pública o privadamente le tenga por hijo suyo o le haya llamado tal en conversación o se ocupe de su educación y sostenimiento.

" '3.—Cuando la madre fué conocida viviendo en concubinato con el padre al tiempo del embarazo o nacimiento del hijo, o cuando éste haya nacido llevando sus padres relaciones amorosas.'

"El inciso tercero del artículo anteriormente copiado introduce una innovación de carácter fundamental, puesto que permite la investigación de la paternidad. Establece este inciso la presunción de paternidad cuando la madre fué conocida viviendo en concubinato con el padre al tiempo del embarazo o nacimiento del hijo. Es, en realidad, una presunción similar a la que se establece en el contrato matrimonial, con la diferencia de que en éste el convenio de las partes sancionado por la solemnidad del matrimonio establece la presunción y en el concubinato la relación entre los padres se establece por medio

de prueba. Es decir, para que el tribunal pueda llegar a la conclusión de que existe el concubinato, es necesario que se pruebe que varón y mujer sostienen relaciones maritales y que han cumplido con los demás requisitos exigidos por la ley. En este caso no puede hacerse la declaración de hijo natural sin investigar los actos que han mediado entre los padres, las relaciones existentes entre uno y otro. En los casos de posesión de estado son los actos directos entre padre e hijo los que pueden ser considerados para determinar la filiación. Además, como cuestión de hecho, la investigación de la paternidad ha venido permitiéndose constantemente en Puerto Rico. La madre ha declarado siempre con toda amplitud sobre las relaciones sexuales con el padre putativo en una acción sobre reconocimiento de hijo natural. El artículo 38 de la Ley de Evidencia declara que todas las personas, sin excepción, fuera de los casos especificados en los artículos 39 y 40, que hallándose en posesión de sus sentidos, pueden percibir y, percibiendo, comunicar sus percepciones a otras personas, son aptas para testigos. El artículo 40 determina los casos en que no se podrá examinar a una persona como testigo y entre esos casos no está comprendido el testimonio de una madre sobre las relaciones sexuales con el supuesto padre de su hijo.

"Este artículo 189 del Código Civil, que fué enmendado en 1911, conserva la disposición que establece la presunción de hijo natural cuando la madre fué conocida viviendo en concubinato con el padre durante el embarazo y al tiempo del nacimiento del hijo. No prohiben nuestras leyes la investigación de la paternidad y, desaparecido este obstáculo, entendemos que los medios de prueba en Puerto Rico son en la actualidad mucho más amplios que los que existían bajo el Código Civil Español. Nuestra ley actual es mucho más humana y liberal al eliminar esta barrera que el comentarista Scaevola califica de barbarismo jurídico. . . ."

Por el quinto y último señalamiento se levanta la cuestión de la suficiencia de la prueba.

Exponiéndola, analizándola y pesándola a la luz de la ley y la jurisprudencia aplicables, la corte sentenciadora, en su relación del caso y opinión, dijo:

"Practicó la actora prueba documental y testifical, consistente la primera en el acta de nacimiento de José Antonio Rivera; y la última en las declaraciones de Herminia Rivera, Buenaventura Ortiz, Ana Mura, Ignacio Borges, José Enrique Gierbolini, Onécimo Bermúdez y Eustaquio A. Rodríguez. Aparece de toda ella que allá por

el año 1920 y residiendo en los campos de Coamo Herminia Rivera, ésta se enfermó y sus familiares la condujeron al hospital municipal de Coamo para ser asistida; que en dicho hospital se hizo cargo de la paciente el Dr. Eladio Izquierdo Serrano, por entonces médico titular del municipio; que el tratamiento de la Rivera fué un mes, bajo la inmediata atención médica del referido Dr. Izquierdo; que restablecida ya de sus dolencias, y ello era por julio o agosto de 1920, el Dr. Izquierdo la llevó a vivir, como su querida, siendo entonces una mujer soltera y virgen, a una casa ubicada en la Calle Baldorioty de Coamo que a tal efecto arrendó a Buenaventura Ortiz a quien pagaba directamente los arrendamientos; que Izquierdo estuvo visitando frecuentemente la casa, y especialmente de noche, hasta febrero de 1921, que, por encargo de y pagado por el Dr. Izquierdo, Onécimo Bermúdez, industrial, suministraba diariamente a la Rivera un litro de leche; que como resultado de aquellas relaciones, Herminia Rivera quedó encinta; que para febrero de 1921 el Dr. Izquierdo se marchó de médico a Guayanilla, donde estuvo poco tiempo, pasando entonces a Patillas; que antes de marcharse, el Dr. Izquierdo encargó a la comadrona y enfermera Ana Mura que asistiera a Herminia Rivera en su parte; y le encargó que de ser necesario utilizara los servicios de un médico; que como avanzaba el estado grávido de la Rivera, ella resolvió irse al campo con sus padres para dar a luz, y así lo hizo; que el 30 de julio de 1931, y asistida por Ana Mura, que se trasladó al campo al recibir el oportuno aviso, dió a luz en el barrio Catalina, de Coamo, un niño varón al que se le puso el nombre de José Antonio; que el Dr. Izquierdo, y por distintos conductos, le enviaba dinero a Herminia Rivera y a su hijo; que a los ocho o quince días de nacido el niño vino a verlo, examinó a la parturienta para conocer su estado de salud, y gratificó a la comadrona con cinco dólares además de pagarle dos pesos por los utensilios usados en el parto; que en distintas ocasiones el doctor volvió a visitar al niño, a quien acariciaba y trataba como hijo; que el Dr. Izquierdo continuó pagando a Ortiz la renta de la casa que Herminia ocupaba en el pueblo, por si ella volvía a habitarla; que tiempo después Ortiz vió al Dr. Izquierdo en Morovis, preguntándole por Herminia y el niño y enviándole dinero con él, añadiendo el testigo que también lo vió en Coamo tratando al niño como su hijo y acariciándole; que el doctor le escribía con alguna frecuencia a Herminia y que habiendo ésta casado en 10 de agosto de 1926 con su actual esposo destruyó las cartas porque 'pensó que a él (su esposo) pudiera no gustarle' que las conservara; que el niño siempre ha vivido al calor y bajo el cuidado de ella y desde 1926 de su citado esposo tam-

bién; que el doctor continuó siempre ocupándose de su hijo; que en 1927, Eustaquio A. Rodríguez, de Coamo, muy amigo del Dr. Izquierdo, visitó a éste en Cataño, y luego de obtener de él una declaración jurada para cierta reclamación de un veterano, el doctor le preguntó por el niño y por Herminia y les envió dinero con él; que en 19 de marzo de 1931, José Enrique Gierbolini, de Coamo, vió al doctor en Corozal quien le preguntó si conocía a la señora con quien él había tenido un niño, contestándole negativamente Gierbolini, y encomendándole entonces el doctor que lo procurase, la viese personalmente y le entregara un dinero que depositó en sus manos, encargo que Gierbolini cumplió; y que supo de la muerte del Dr. Izquierdo por los periódicos.

" .     .     .     .     .     .     .     .     .     .     .

"Esa es, en síntesis, con algunos otros detalles que hacen más vivo el cuadro, la prueba producida por la demandante. Ella no fué destruída en forma alguna. Nada hay, por la cuidadosa observación que hicimos de los testigos mientras producían sus manifestaciones, que nos cree inquietud alguna en cuanto a la veracidad de los deponentes. Nos merecieron entero crédito.

"Dice el inciso 2 del artículo 183 de nuestro Código Civil que cuando el hijo se halla en la posesión continua del estado de hijo natural del padre demandado, justificado por actos del mismo, el padre está obligado a reconocer al hijo natural. Habiendo nacido José Antonio Rivera el 20 de julio de 1921, ésa es la ley que le ampara. Una vez establecida la posesión de estado por actos directos y continuos del padre, nos parece que éste ni los que compongan su sucesión pueden despojar al hijo del estado de filiación así adquirido. Escriche dice que 'el reconocimiento no es una liberalidad propiamente dicha, sino la declaración de un hecho al cual confiere la ley ciertas ventajas; pero una vez hecha esta declaración de paternidad, adquiere el hijo el estado de filiación del que ya no puede ser despojado.' O, como se dice en *Colón* v. *Tristani*, 44 D.P.R. 171, 180:

" 'La paternidad y la filiación surgen de la concepción y el nacimiento. La ley exige ciertas condiciones para que el hecho natural de la concepción y el nacimiento puedan tenerse y considerarse como derecho. Cuando han concurrido estas condiciones el hecho de la filiación queda establecido, pero para que adquiera vida legal es necesaria la formalidad del reconocimiento. La naturalidad del hijo es siempre un hecho; el reconocimiento es la consagración de ese hecho, la solemnidad que proclama que los requisitos que la ley exige han quedado cumplidos, y coloca al hijo en condiciones de demandar la ratificación de los derechos que como a tal hijo le correspondan.' "

Y terminó resolviendo:

"La demanda debe ser declarada con lugar, sin especial imposición de costas. El secretario registrará sentencia de conformidad."

Nada tenemos que agregar. La evidencia fué bien resumida y apreciada, y la ley y la jurisprudencia debidamente interpretadas y aplicadas. Hemos dado cuidadosa atención a los argumentos que contiene el alegato del apelante razonando el señalamiento de error, pero no hemos quedado convencidos de lo contrario. *Debe declararse sin lugar el recurso y confirmarse la sentencia apelada.*

El Juez Asociado Señor Wolf disintió.*

El Juez Asociado Señor Córdova Dávila no intervino.